UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:25-CV-00226-CRS

CELESTINA FRANCIS                                                    PLAINTIFF

v.

OMNI HOTELS MANAGEMENT CORP.                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination case. Plaintiff, Celestina Francis, worked for defendant, Omni Hotels. She alleges that she was forced to resign due to Omni's discriminatory conduct and retaliation against her for reporting that conduct. Pending before this Court are Francis' Motion to Remand and Omni's Motion to Compel Arbitration and Stay Proceedings. Both motions are ripe for review. For the reasons set forth below, the Court will deny Francis' Motion to Remand and grant Omni's Motion to Compel Arbitration and Stay the Proceedings.

## BACKGROUND

Francis filed the instant action in the Jefferson Circuit Court. She has asserted the following claims: (1) Omni discriminated against her based on her race; (2) it discriminated against her based on her national origin; (3) it retaliated against her because she reported that discrimination; and (4) it constructively discharged her. Compl., DN 1-3. Francis has brought these claims pursuant to the Kentucky Civil Rights Act and under the common law of Kentucky. On April 21, 2025, Omni properly removed the action to this Court based on diversity jurisdiction. Notice of Removal, DN 1. Even though this Court has jurisdiction, Francis has moved to remand. Motion, DN 9. Francis argues that the Court should abstain from exercising its jurisdiction pursuant to the *Burford* and

*Thibodaux* abstention doctrines. *Id*. at PageID# 59–61. Abstention under these doctrines is not warranted, however. Thus, the Court will deny Francis' Motion to Remand.

Also before the Court is Omni's Motion to Compel Arbitration (DN 12). When Omni hired Francis, she agreed to resolve by arbitration "all claims or controversies involving or in any way concerning [her] application with, employment with, or termination from the Company." Agreement, DN 12-1 at PageID# 102. The agreement also made it clear that discrimination claims fall within its scope:

> The claims covered by this Program include claims for *discrimination*, harassment or *retaliation of any kind*- including without limitation harassment or discrimination based on . . . , *race*, *nationality. . . and claims for violation of any federal or state statute or common law or regulation.*

*Id*. (emphasis added). Francis does not dispute that she signed the agreement, nor does she contend that her claims are not within the scope of the agreement. *See* Response, DN 14. Francis challenges the enforceability of the agreement. *Id*. She contends that the agreement is contrary to Kentucky law and public policy because Kentucky law guarantees her a right to have her employment discrimination claims heard in a state circuit court. *Id*. at PageID# 123–24 (citing KRS 344.450). According to Francis, the arbitration agreement she signed violates that right, rendering it illegal and against Kentucky's public policy for that reason. Thus, she contends that the agreement is void *ab initio*. *Id*. at PageID# 117–25. Contrary to Francis' argument, Kentucky law expressly permits employers to require employees to sign arbitration agreements as a precondition to employment. KRS 336.700. Thus, the arbitration agreement she signed is neither illegal nor unenforceable as against public policy.

2

## ANALYSIS

### A.  Francis' Motion to Remand

It is well established that abstention doctrines represent a narrow exception to a federal district court's duty to adjudicate cases before them. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Thus, "only the clearest of justifications" warrant remand of a case for abstention purposes. *Id.* at 819. No such justifications exist here. Francis relies on the abstention doctrines announced in *Burford* and *Thibodaux*, but her case does not present circumstances that justify abstention under either doctrine.

### 1.  The *Burford* Abstention Doctrine

The *Burford* abstention doctrine arose from *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The case involved a dispute over the issuance of an oil drilling permit in the East Texas oil field. *Id*. at 317. It also concerned the complexities regarding the distribution of those oil drilling permits. *Id*. at 319. Distributing such permits carried significant economic implications not only for permit holders but also for future applicants and for the environment. *Id*. The East Texas oil field was enormous. *Id*. at 318. It required consistent administration over thousands of wells and nine hundred operators who were all drawing oil from the same underground reservoir. *Id*. at 319. Because of the way the oil moves underground in a giant pool, its pressure must be maintained and carefully controlled to prevent unnecessary waste and permanent loss. *Id*. These concerns implicated how many permits could be responsibly issued and where applicants would be permitted to drill. *Id*. One operator's drilling had the potential to drain oil in a way that could disrupt the entire field. *Id*. Because of these geological complexities, the regulation of each field as a unit was necessary. *Id*. In short, granting permits required assessing several factors including oil supply, market demand, protection of individual operators, and public interest. *Id*. at 321.

As a result, the Texas Legislature enacted a regulatory scheme with a centralized process for judicial review of administrative decisions made under that scheme, including granting drilling permits. Pursuant to the regulatory scheme, the Texas Legislature vested the Texas Railroad Commission with the power to grant oil drilling permits. *Id.* at 320. The district court in Travis County was designated as the exclusive forum for judicial review of the Commission's decisions. *Id.* at 325. This designation enabled the district court to gain extensive experience and expertise in adjudicating the complex disputes often arising from permit distribution. *Id.* at 327.

Sun Oil sidestepped this process. *Id.* at 316. The Commission had granted an oil drilling permit to Burford that allowed it to drill four wells in the East Texas oil field. *Id.* at 317. Sun Oil contended that this decision was unreasonable and violated its due process rights. *Id.* It filed these claims in federal district court. The district court abstained. The Court of Appeals for the Fifth Circuit reversed. The Supreme Court reversed the Court of Appeals, holding that abstention was appropriate. *Id.* at 334. In so holding, the Supreme Court established two categories of cases that can warrant abstention: (1) when there are "difficult questions of state law" that bear on substantial policy problems and which "transcend[] the result in the case then at bar" or (2) when "adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 707 (1996) (quoting *Colorado River,* 424 U.S. at 814).

Francis argues that her case falls squarely within the first category. Motion, DN 9 at PageID# 59. It does not. Francis' case consists of routine, employment discrimination claims brought pursuant to Kentucky law: (1) race discrimination, (2) national origin discrimination, (3) retaliation, and (4) constructive discharge. None of these claims presents difficult questions of state law. Each is governed by well-settled precedent. Indeed, Francis has failed to identify any

4

issues that present difficult or complex questions of law. Nor does her case require the Court to render a decision that would affect or interfere with a state regulatory system. Nor does her case present issues that transcend this particular dispute. The adjudication of Francis' claims will be remedial in nature and limited to the two parties involved. She seeks damages for Omni's allegedly unlawful conduct. Compl., CN 1-3 at PageID# 32-33. A damages judgment will not bind other potential plaintiffs with claims like Francis'.

Finally, while Francis contends that her claims involve "intensely local questions of law and public importance," simply advancing this assertion does not make it so. Francis has not explained what she means by this phrase and has not otherwise developed an argument to support it. She certainly has not explained how this contention is consistent with the first category of cases *Burford* described as warranting abstention. This Court has no obligation to guess at what Francis means and then rule on the merits of that guess. *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (citations omitted). Having been presented with no circumstances that warrant abstention under *Burford*, and seeing none, the Court declines to abstain pursuant to that doctrine.

## 2. The *Thibodaux* Abstention Doctrine

The Supreme Court established an additional abstention doctrine in *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959). *Thibodaux* concerned whether the city possessed expropriation authority, specifically the prerogative to take real property owned by a public utility. *Id*. The city contended that a Louisiana statute gave it that prerogative. *Id.* at 25, 30. No binding precedent interpreting the statute existed. *Id*. at 30. However, the Louisiana Attorney General had opined that the statute did not give a city the power to take utility-owned, private property. Thus,

5

when presented with the issue, the district court found that Louisiana law was unsettled. *Id*. That factor contributed to its decision to abstain.

Additionally, because the statute at issue expressly gave only the State of Louisiana expropriation power and because the city was not the state itself, the case "intimately involved" Louisiana's "sovereign prerogative." *Id*. at 28. That is, a decision would potentially determine whether the state statute could be read to include a delegation of Louisiana's takings power to one of its cities. In this way, a decision risked "serious disruption . . . of state government." *Id*. at 28. This factor also informed the district court's decision to abstain. The Supreme Court determined that the district court's abstention was appropriate. Therefore, the *Thibodaux* abstention applies when a case raises an unsettled question of state law that is "intimately involved with" the state's "sovereign prerogative." *Id*. at 28–29.

The Court sees no such circumstances in this case, and again, Francis has failed to present the Court with any reason to reach the opposite conclusion. Francis asserts that the laws at issue here are "so bound up with a state's sovereign prerogatives . . . that [this Court] should refrain from proceeding." Motion, DN 9 at PageID# 60. But she does not support this contention with any facts or any law. Again, the Court has no obligation to make arguments for Francis. Moreover, Kentucky's discrimination law is not unsettled. There are long lines of Kentucky precedent governing claims, like Francis', which are brought pursuant to Kentucky's Civil Rights Act and under the common law of Kentucky. Nor do Francis' claims "intimately involve" Kentucky's sovereign prerogative. There is no issue that touches upon the State of Kentucky's ability to exercise any power granted to it under any law. For these reasons, abstention under *Thibodaux* is not warranted.

6

**B. Omni's Motion to Compel Arbitration**

The parties dispute the validity of the arbitration agreement they both signed. Omni asserts that the agreement is valid and enforceable. Motion, DN 12. Francis asserts that it is void because it violates Kentucky law and public policy. Response, DN 13. However, Francis' assertion is misplaced. Because the arbitration agreement here operates within the bounds of Kentucky law, the Court finds that the agreement is valid, and Francis' argument fails. Accordingly, the Court will grant Omni's motion to compel arbitration and stay this case.

The Federal Arbitration Act generally favors the enforceability of valid arbitration agreements, subject to generally applicable contract principles, such as illegality. 9 U.S.C. § 2; *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996). State law determines whether such an agreement is illegal and thus enforceable. *Fazio v. Lehman Bros.*, 340 F.3d 386, 393 (6th Cir. 2003). Under Kentucky law, a contract that has a direct objective or purpose which violates a statute is illegal. *Yeager v. McLellan,* 177 S.W.3d 807, 809 (Ky. 2005) (citations omitted). Finally, the party seeking to invalidate the agreement bears the burden of demonstrating that it is invalid. *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000).

Francis has not carried this burden of proof. She contends that her arbitration agreement is invalid because it is illegal. However, she relies on a selective and incomplete reading of the governing statutes for that contention. Francis relies on KRS 366.700(2) for the proposition that arbitration agreements are illegal if they "waive or diminish a substantive statutory right." And, because KRS 344.450 gives her the right to be heard in a Kentucky circuit court, her arbitration agreement forces her, illegally, to waive that right. Response, DN 14 at PageID# 119. But her contention fails because she selectively quotes certain language from KRS 366.700(2) and omits other language that dispels her argument. Francis partially quotes KRS 366.700(2) as follows:

7

> "no employer shall require as a condition or precondition of employment that any employee or person seeking employment waive or otherwise diminish any existing or future claim, right, or benefit to which the employee or person seeking employment <u>would otherwise be entitled under any provision of the Kentucky Revised Statutes</u> or any federal law." [emphasis added]

*Id*. She omits the following key language, emphasized here for clarity:

> (2) Notwithstanding any provision of the Kentucky Revised Statutes to the contrary and ***except as provided in subsection (3) of this section***, no employer shall require as a condition or precondition of employment that any employee or person seeking employment waive or otherwise diminish any existing or future claim, right, or benefit to which the employee or person seeking employment would otherwise be entitled under any provision of the Kentucky Revised Statutes or any federal law.

(emphasis added). The italicized language is dispositive—it exempts subsection (3) from subsection (2)'s prohibition. Subsection 3 reads as follows:

> Notwithstanding subsection (2) of this section:

> Any employer may require an employee or person seeking employment to execute an agreement for arbitration, mediation, or other form of alternative dispute resolution as a condition or precondition of employment.

(emphasis added). Clearly, KRS 336.700(3) expressly exempts employment arbitration agreements—like the one Francis signed—from the broader prohibition contained in subsection (2). *Id*. For this reason, Francis' illegality argument fails outright. The same statute evinces a public policy in favor of permitting employers to require their employees to sign arbitration agreements as a condition to their employment. For this reason, Francis' void-as-against-public-policy argument is unavailing.

Moreover, Francis has mistakenly contended that her arbitration agreement extinguishes her right to have her case heard. *Id*. at PageID# 124. She argues that this result violates Kentucky's interest in enforcing its civil rights laws. Response, DN 14 at PageID# 124. Francis cites KRS 344.450 for this proposition *Id*. at PageID# 118 (KRS 344.450 states that "Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit

Court."). An arbitration agreement does not extinguish Francis' right to be heard. It only changes the forum in which she will be heard. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). And, absent a clear legislative intent to preclude arbitration of claims outside a judicial forum, parties should be held to the arbitration agreements they sign. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009). KRS 336.700's express language shows that the Kentucky Legislature's intent was to permit arbitration of employment-related claims. *See also Jackson v. Legacy Health Servs. Inc.*, 640 S.W.3d 728, 735 (Ky. 2022) (citing *Schnuerle v. Insight Commc'ns Co.*, 376 S.W.3d 561, 574 (Ky. 2012)). Finally, when the Kentucky legislature permits a practice, courts may not find that same practice to be in violation of its public policy. *See JP Morgan Chase Bank, N.A. v. Longmeyer*, 275 S.W.3d 697, 702 (Ky. 2009) (citations omitted); *Kentucky State J. Co. v. e Comp. Bd.*, 161 Ky. 562, 170 S.W. 437, 438 (1914) ("The public policy of a state is expressed in its . . . statutes . . . and if the . . . statutes speak upon a subject, the public policy of the state is fixed to that extent.").

Francis' right to have her claims heard have not been abrogated by her arbitration agreement. She simply agreed to pursue her claims in an arbitral as opposed to a judicial forum. Her claims are preserved. Kentucky's public policy as evinced in the statutes on which Francis has relied does not require a different conclusion.

**CONCLUSION**

Abstention is not warranted in this case under either *Burford,* 319 U.S. at 315, or *Thibodaux,* 360 U.S. at 25. Accordingly, plaintiff Francis' Motion to Remand **(DN 9)** is **DENIED.** Because Francis' arbitration agreement is valid and enforceable under Kentucky law, defendant Omni's Motion to Compel Arbitration and Stay All Proceedings **(DN 12)** is **GRANTED.** The

9

parties to this action are **COMPELLED** to arbitrate all claims. This case is **STAYED** pending the conclusion of the ordered arbitration.

       **IT IS SO ORDERED.**

March 26, 2026

**Charles R. Simpson III, Senior Judge**
**United States District Court**